David D. and Greta R. Fagerland v. Commissioner.
Fagerland v. Commissioner
Docket No. 3859-70 SC.
United States Tax Court
T.C. Memo 1971-134; 1971 Tax Ct. Memo LEXIS 198; 30 T.C.M. (CCH) 583; T.C.M. (RIA) 71134; June 9, 1971, Filed. David D. Fagerland, pro se, 26 Sandalwood Ct., San Rafael, Calif.Jeffrey E. Boly, for the respondent. SACKS Memorandum Opinion SACKS, Commissioner: Respondent determined a deficiency of $744.98 in petitioners' Federal income tax for the year 1968. The only issue for decision is whether petitioner David D. Fagerland received compensation in 1968 for active service as a member of the *199 Armed Forces of the United States and thereby qualified for a $3,500 combat pay exclusion from gross income under section 112(b)(1), Internal Revenue Code of 1954. All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. To the extent deemed pertinent, they are summarized below. David D. Fagerland (herein called petitioner) and Greta R. Fagerland resided in San Rafael, California, at the time they filed their petition in this case. They filed a joint Federal income tax return with the district director of internal revenue at San Francisco, California, for the taxable year 1968. Petitioner was a civilian noncombat airline pilot employed by Pan American World Airways, New York, New York (herein called Pan American), during the year in question. His entire salary of $18,219.82 was paid by Pan American. Pan American is a commercial airline. Besides regularly scheduled passenger flights, Pan American also operates under military contract to the Defense Department as a carrier of military personnel and military supplies (some of which are explosive). *200 These flights consist of three types: (1) transportation of military personnel on leave from Vietnam for rest and recreation, (2) transportation of military personnel from the United States to Vietnam and vice versa, and (3) transportation of military cargo to Vietnam. For seven months during 1968, petitioner on occasion flew Pan American aircraft from the following airfields: Travis Air Force Base, California, Hickam Air Force Base, Hawaii, Agana Naval Air Station, Guam, Anderson Air Force Base, Guam, Yokota Air Force Base, Japan, and Tachikawa Air Force Base, Japan, to the following airfields in Vietnam: Saigon, Danang, Camrahn Bay and Bien Hoa. Except for the flights originating at Travis Air Force Base, the petitioner would depart from his 584 home base in San Francisco on regularly scheduled commercial flights. Then he would transfer to one of the air bases referred to above to pilot a military contract flight to one of the above-mentioned locations in Vietnam. Petitioner piloted such flights on approximately 20 separate occasions during 1968. Each of these trips involved a two or three-hour stopover in Vietnam for loading and unloading. Prior to these Vietnam flights, *201 petitioner and the other members of the crew were cleared for security, and given military briefings. The crew carried identification cards on these flights. Petitioner's identification card classified him a "civilian noncombatant serving with the Armed Forces of the United States" and provided that in the event of enemy detention, he was entitled to the same treatment as a member of the Air Force with the rank of captain. Petitioner is a lieutenant in the Naval Air Reserve. However, there is no connection between this position and his civilian employment by Pan American on flights to Vietnam. For purposes of his Pan American employment, petitioner is not a commissioned officer in any of the Armed Forces of the United States, he does not wear a military uniform, and he does not receive any direct compensation for active service as a commissioned officer from the Armed Forces of the United States. Pan American has designated petitioner as a first officer (also known as copilot) on Boeing 707 aircraft. The flight assignment schedules flown by each category of Pan American flight crew personnel home based in San Francisco is determined by bidding on the basis of seniority. There are *202 241 first officers home based in San Francisco of whom 235 outranked petitioner. Regardless of seniority, 70 percent of the flight assignment schedules for first officers based in San Francisco land in Vietnam, and an additional 20 percent of such schedules require flight over Vietnam. Albeit San Francisco is a desirable home base, the petitioner could have avoided flying into Vietnam by transferring to another home base such as New York. While flying for Pan American over Vietnam, the aircraft piloted by petitioner was hit by small arms fire on one occasion. On June 14, 1969, the petitioner was awarded a "Certificate of Recognition and Appreciation" for his outstanding service to the United States by participation in sustained aerial support of the United States Armed Forces engaged in combat operations within the Republic of South Vietnam during 57 Contract Airlift Logistical Support Missions for the Military Airlift Command between June 21, 1966, and November 4, 1968. Petitioner contends that he is entitled to exclude $3,500 from his gross income as combat pay under the provisions of section 112(b)(1). [1] Respondent contends otherwise, arguing that the claimed exclusion was *203 properly disallowed because the petitioner received such amount as compensation for his services to Pan American as a civilian pilot and not as compensation for active service as a member of the Armed Forces of the United States. His position is that neither the receipt of compensation indirectly from the United States Government nor the trappings of military status are sufficient to bring the petitioner within the precise provisions of the statute. We agree with the respondent. The record shows that petitioner's entire salary was received from Pan American for his services as a civilian pilot. Although he holds the rank of lieutenant in the United States Naval Air Reserve, petitioner's reserve status cannot be treated as "active service" within the meaning of section 112(b)(1). Section *204 1.112-1(i), Income Tax Regs., provides that a "member of the Armed Forces is in active service if he is actually serving in the Armed Forces of the United States." Clearly the petitioner was not actually serving in the Armed Forces of the United States. He was a civilian employee actually serving Pan American. The record shows that the petitioner was provided with an identification card indicating that he was a "civilian noncombatant serving with the Armed Forces of the United States" and that in the event of enemy detention he was to be treated as a member of the United States Air Force with the rank of captain. We think such an identification card was simply a 585 precautionary measure to insure petitioner's safety in the event of capture by extending to him the protective provisions of the Geneva Convention of 1949. No doubt Congress is fully cognizant of the danger to civilian pilots who transport military personnel to and from Vietnam, yet it has not granted to them the benefit of the exclusion under section 112(b)(1). This Court cannot fill the legislative void. Petitioner has also raised a question as to the meaning of the term "induction period." It is our view *205 that petitioner was not serving in "a combat zone during an induction period." Section 112(c)(5) defines "induction period" as meaning: any period during which, under laws heretofore or hereafter enacted relating to the induction of individuals for training and service in the Armed Forces of the United States, individuals (other than individuals liable for induction by reason of a prior deferment) are liable for induction for such training and service. This definition is amplified by section 1.112-1 (f), Income Tax Regs., which provides The term "induction period" means any period in which individuals are generally subject to induction into the Armed Forces of the United States under the Universal Military Training and Service Act (50 App. U.S.C. 451) or under similar acts hereafter enacted. In our opinion "induction period" refers to a general qualifying period of time and not to an extension of the class of individuals qualifying for the exclusion beyond a member in active military service in a combat zone. The exclusionary provisions which now appear in section 112 are essentially the same as those which appeared in section 22(b)(13) of the Internal Revenue Code *206 of 1939 except that a specific date appeared in the wording of the provision where the term "induction period" now appears. This construction of the statute required the Congress to periodically amend the section in order to extend its provisions beyond the prior expiration date. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 16 and A36 (1954); and the explanation contained in the Notes on Background of Existing Provisions of the Federal Income and Employment Tax Laws by the Staff of the Joint Committee on Internal Revenue Taxation and the Treasury Department, p. 8 (1960). Accordingly, we hold that petitioner was not compensated in 1968 for active service as a member of the Armed Services of the United States and, notwithstanding his presence in a combat zone, he has not fulfilled the basic requirements of section 112(b)(1). Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. SEC. 112. CERTAIN COMBAT PAY OF MEMBERS OF THE ARMED FORCES. * * * (b) Commissioned Officers. - Gross income does not include so much of the compensation as does not exceed $500 received for active service as a commissioned officer in the Armed Forces of the United States for any month during any part of which such officer - (1) served in a combat zone during an induction period, * * *↩